IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
                          EASTERN DIVISION

DIANNE KAMPINEN,                )
                                )
          Plaintiff,             )
                                )
     v.                          )        No.  11 C 2888
                                )
U.S. DEPARTMENT OF COMMERCE,     )
et al.,                          )
                                )
          Defendants.            )

                    MEMORANDUM OPINION AND ORDER

    This Court originally appointed a member of this District Court's trial bar to represent plaintiff Dianne Kampinen ("Kampinen"), who had sought and was granted leave to proceed in forma pauperis, in the hope that professional help might assist in addressing the numerous flaws in Kampinen's prolix pro se submission (see this Court's May 5, 2011 memorandum order) so that the case could go forward in an orderly manner.  That appointment was made on the basis of Kampinen's Motion for Appointment of Counsel ("Motion"), which had been filed in conjunction with the Complaint.

    Kampinen's Motion had listed these individuals and law firms from whom she had sought representation on her own:

>    Kenneth Lumb, Brian Owen, Jenner & Block, Johnson &
>    Bell, Jeffrey Kroll, "Chicago Volunteer Legal," Kent
>    College of Law, Brinks, Hofer Firm (Mr. Gabric);
>    James G. McCarthy; Mark D. Olson; Daniel G. Suber &
>    Assoc.; Epstein & Epstein; Lane & Lane (Mr. Brown,
>    atty); Joshua D. McCann; Sean M. Houlihan, others, as
>    well.

On the one hand such efforts might simply reflect a commendable

persistence on the part of a putative client, while on the other hand the lack of success in those endeavors might reflect the judgment of the lawyers who had been approached that, having talked with the prospective client, they would prefer not to take her on. This Court gave Kampinen the benefit of the doubt on that score at the outset, although her combativeness and unwillingness to listen during in-court proceedings since then have cast a substantial cloud on that initial decision.

Despite counsel's appointment, less than a week later (on May 11) Kampinen came in on a motion for reconsideration that, among other things, asked that she be permitted to <u>enlarge</u> the Complaint by adding other counts and related exhibits.[1] That motion for reconsideration described in some detail Kampinen's claimed research and her self-evaluation of her claims. It clearly would have generated more rather than less prolixity, and this Court denied it--not the least because it would have defeated the purpose that the appointment of counsel was hoped to accomplish.

Less than six weeks after the May 5 order of appointment,

---

[1] It is noteworthy that Kampinen's Complaint had appeared to sue almost everybody in sight--she had named as defendants "U.S. Department of Commerce; Secretary of Commerce, Gary Locke; Census Bureau Director, Dr. Robert Groves; U.S. Department of Homeland Security, (DHS) Janet Napolitano, Secretary; Agency within in, US Secret Service; and its Director, Mark Sullivan: and: U.S. Department of Justice, (DOJ) and the FBI, and its Records maintenance Division Section Chief, David M Hardy."

2

the appointed lawyer presented a motion seeking to withdraw,
stating in part:

> 2. Since that order was issued, appointed counsel has spoken with Ms. Kampinen multiple times over the phone in an effort to determine the nature of Kampinen's claims. Additionally, on May 24, 2011, appointed counsel met personally with Kampinen at counsel's office, and that meeting lasted for approximately two and a half hours. Again, the purpose of this meeting was to determine the nature of Kampinen's claims and to determine the best course of action to take regarding Kampinen's pro se complaint.
>
> 3. Recently, appointed counsel corresponded with Kampinen via letter and outlined the manner in which appointed counsel believes that Kampinen should proceed with this matter. Kampinen does not agree with counsel's recommendations, and on June 7, 2011, appointed counsel received a message from Kampinen in which Kampinen asked appointed counsel to withdraw from this case.
>
> 4. There is substantial disagreement between Diane Kampinen and court-appointed counsel. As a result of that disagreement, and pursuant to United States District Court for the Northern District of Illinois, Local Rule 83.38(a)(3), court-appointed counsel, Brian P. Gainer of Johnson & Bell, Ltd. seeks relief from this Court's order of appointment.

Kampinen responded with a sharply different view that, quite apart from any attempt to evaluate the validity of the respective versions (a matter on which this Court expresses no opinion), both (1) confirmed the impression that had been conveyed (and that has continued to be conveyed thereafter) by Kampinen's filings and by her in-court demeanor and conduct mentioned at the end of the second paragraph of this opinion and (2) demonstrated Kampinen's obviously strong sense that she knew very well what

her litigation goals were and that she would not brook any disagreement with those views.

Accordingly this Court granted counsel's motion for leave to withdraw (a request to which Kampinen had interposed no objection). At the same time, in accordance with the discretion expressly granted by this District Court's LR 83.8(b), this Court declined to appoint another lawyer from the trial bar to represent Kampinen pro bono publico.

Now Kampinen has submitted a filing captioned "Motion to Request Permission for Interlocutory Appeal" from this Court's denial of the appointment of a second lawyer to represent her. As chance would have it, on Monday of this week the United States Supreme Court decided Turner v. Rogers, No. 10-10, 564 U.S. --, a case that reconfirmed the propriety of the discretion that has been vested in this Court by LR 83.8(b) and has been exercised via this Court's denial of Kampinen's request.

In Turner, despite their 5-to-4 split in terms of the result reached, all nine justices confirmed that civil litigants have no right to the appointment of counsel in cases that do not involve incarceration. Speaking for the five-Justice majority, Justice Breyer followed this quotation from Lassiter v. Dep't of Social Servs. of Durham Cty., 452 U.S. 18, 25 (1981):

> [The] pre-eminent generalization that emerges from this Court's precedents on an indigent's right to appointed counsel is that such a right has been recognized to exist only where the litigant may lose his physical

4

liberty if he loses the litigation.

with this statement (emphasis in original):

> We believe those statements [in Lassiter and several other cases] are best read as pointing out that the Court previously had found a right to counsel "only" in cases involving incarceration.

And for the four dissenting Justices, Justice Thomas wrote (citations omitted):

> The Court has never found in the Due Process Clause a categorical right to appointed counsel outside of criminal prosecutions or proceedings "functionally akin to a criminal trial." This is consistent with the conclusion that the Due Process Clause does not expand the right to counsel beyond the boundaries set by the Sixth Amendment.

At the time of yesterday's presentment of Kampinen's motion, this Court explained to her that the order was not appealable as a final order, although the Court of Appeals might perhaps consider it as qualifying for a permissible collateral appeal under Cohen v. Beneficial Finance principles. This Court went on to explain (1) that subject to Fed. R. App. P. ("Rule") 24(a)(3)(A), the earlier grant of in forma pauperis status at this District Court level would carry with it the privilege of proceeding on appeal in forma pauperis without further authorization and (2) that for purposes of evaluating the last-cited Rule this Court would apply the normal test for in forma pauperis treatment, which requires not only the proposed appellant's showing of financial inability to pay the filing fee ($455 in the case of an appeal) but also the appellant's

5

assertion of a nonfrivolous claim in the legal sense.

As before, at the time of presentment Kampinen exhibited more interest in repeating her own unhappiness with the appointed counsel's efforts (or asserted lack of effort) than in listening to this Court--she certainly gave no heed to this Court's expression of concern that she might perhaps create a risk for herself of becoming subjected to payment of the $455 in filing fees if she were to persist in pursuing an in forma pauperis appeal and were to prove unsuccessful in that effort before the Court of Appeals. But in any event this Court is called upon to exercise its judgment under Rule 24(a)(3)(A). On that score it determines that Kampinen's proposed appeal does not qualify in terms of its legal nonfrivolousness for the reasons indicated by this memorandum opinion and order (a determination that also encompasses this Court's finding that the proposed appeal would not qualify as having been taken in good faith in the <u>objective</u> sense). Hence this Court "certifies that the appeal is not taken in good faith [and] finds that the party is not otherwise entitled to proceed in forma pauperis," and it has stated its reasons for that certification and finding in this opinion.

_____
Milton I. Shadur
Senior United States District Judge

Date: June 24, 2011